UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VANESSA N.,

                    Plaintiff,                      **DECISION AND ORDER**

      v.

                                        1:23-CV-00913 EAW

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Vanessa N. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 10) is granted.

**BACKGROUND**

Plaintiff protectively filed her application for SSI on September 2, 2020. (Dkt. 6 at

30, 377-82).[1] She also protectively filed an application for disabled widow's benefits on

March 31, 2021. (*Id.* at 30, 387-90). In both applications, Plaintiff alleged disability

beginning September 10, 2009. (*Id.* at 30, 377, 388). Plaintiff's applications were initially

denied on January 27, 2021, and on reconsideration on August 23, 2021. (*Id.* at 30, 146,

199-206, 207-14). At Plaintiff's request, a telephone hearing was held before

administrative law judge ("ALJ") Paul Georger on June 21, 2022. (*Id.* at 30, 55-80).

Through counsel, Plaintiff amended her onset date to January 12, 2021, and withdrew her

request for a hearing as pertained to widow's disability insurance benefits and that

application was dismissed. (*Id.*at 30-31). On September 28, 2022, the ALJ issued an

unfavorable decision. (*Id.* at 30-46). Plaintiff requested Appeals Council review; her

request was denied on July 5, 2023, making the ALJ's determination the Commissioner's

final decision. (*Id.* at 7-11). This action followed.

**LEGAL STANDARD**

I.    **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this

Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard." *Talavera*

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If

the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

## I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since January 12, 2021, the amended alleged onset date.  (Dkt. 6 at 33).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: left leg femur fracture, cervical spine disorder, lumbar spine disorder with left sided-sciatica, asthma, and obesity.  (*Id.*).  The ALJ further found that Plaintiff's hypertension, history of right carpal tunnel syndrome, anxiety, and depression were non-severe.  (*Id.* at 33-35).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 35).  The ALJ particularly considered the criteria of Listings 1.15, 1.22, 3.03, and Plaintiff's obesity, in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] can have occasional use of ramps and stairs, but no use of ladders, ropes and scaffolds.  [Plaintiff] can perform occasional balancing, stooping, kneeling, crouching and crawling and have occasional exposure to humidity and wetness, as well as occasional exposure to dust, odors, fumes and pulmonary irritants, occasional exposure to extreme cold and extreme heat.  [Plaintiff] is limited to simple, routine repetitive tasks, can make simple work-related decisions and have occasional interaction with coworkers, supervisors and the public.  She can have occasional changes to the worksite and routine.  [Plaintiff] requires a cane to ambulate.

(*Id.* at 25).  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 44).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of office helper, hand packager, and final inspector. (*Id.* at 45). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.   The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision, arguing that the ALJ: (1) cherry-picked and mischaracterized evidence in reaching the physical RFC determination; and (2) failed to explain additional limitations that would be required in light of Plaintiff's use of a cane. The Court is not persuaded by these arguments, for the reasons discussed below.

### A.   The RFC Determination

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical

and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

It is well-settled that "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source" (citations omitted)). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *see also Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimalizing Dr. Dron's opinion."). However, "an allegation of cherry-picking is seldom successful because crediting it would require a court

to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (quotations and citations omitted).

Plaintiff argues that the ALJ cherry-picked evidence and did not discuss certain evidence supporting greater restrictions than those imposed in the RFC.  Plaintiff's characterization of the written determination as cherry-picking evidence is not supported by the record.  Rather, as explained below, the written determination makes plain that the ALJ considered Plaintiff's medical history, her testimony regarding her functioning, the medical opinion evidence, and treatment records, in concluding that Plaintiff was capable of performing a reduced range of light work.

The ALJ first discussed Plaintiff's testimony that she is unable to work due to physical and mental impairments, including symptoms of chronic pain, fatigue, limitations of mobility, sleep disruption, weakness, numbness, swelling, and difficulty breathing due to asthma.  (Dkt. 6 at 37-38).  He noted that her activities of daily living are not entirely consistent with her allegations of disabling symptoms, in that she is able to engage in personal hygiene, prepare simple meals, perform light household chores with assistance, shop, use a computer or smart phone, handle finances, care for pets, use public transportation, go out alone, and play with her grandchildren.  (*Id.* at 38).  He also noted

that she sends out letters and makes calls on behalf of the Jehovah's Witnesses organization.  (*Id.* at 38-39).

The ALJ then addressed the objective medical evidence, including grossly normal clinical findings and conservative treatment modalities reflecting stability with medication. He also assessed the medical opinion evidence of record.  State agency medical consultant V. Baronos, M.D., opined that Plaintiff can perform a range of work at light exertion and the ALJ found this opinion somewhat persuasive.  The ALJ reasoned that Dr. Baronos "is an acceptable medical source with program knowledge and fully familiar with the Social Security policies and regulations regarding disability despite not personally examining [Plaintiff]," but that because "he did not adequately consider [Plaintiff's] combined impairments and residual symptoms, including evidence received at hearing level which reflect she is more limited than opined, requiring the use of a cane for ambulation given her left leg fracture," that the opinion was somewhat persuasive regarding exertion and environmental restrictions but that additional limitations were warranted.  (*Id.* at 42).

He also discussed the prior administrative findings of State agency medical consultants D. Brauer, M.D., and J. Meyer, M.D., who opined that Plaintiff could perform a range of medium work.  (*Id.*).  The ALJ found these opinions not persuasive, because although they are acceptable medical sources with program knowledge, they did not personally examine Plaintiff or have a longitudinal treatment history.  (*Id.*).  The ALJ also concluded that these consultants "did not adequately consider [Plaintiff's] combined impairments and residual symptoms, which reflect she is more limited than opined as she did not have the benefit of reviewing the complete record, including the January 2022 left

femur fracture, as outlined above," or Plaintiff's "consistent reports of pain complaints throughout treatment or the need for injection therapy for pain management, which support greater limitations than opined." (*Id.*).

The ALJ found the opinion of consultative examiner Nikita Dave, M.D., to be persuasive. (*Id.*). Dr. Dave opined that Plaintiff required environmental limitations and mild postural and exertional limitations resulting from her asthma and musculoskeletal complaints. The ALJ noted that Dr. Dave is an acceptable medical source with program knowledge who is fully familiar with the Social Security policies and regulations, and found her opinion to be consistent with and supported by her own correlating findings upon examination, as well as with Plaintiff's correlating treatment records from Urban Family Medical and UBMD Neurosurgery. (*Id.* at 42). The ALJ concluded that subsequent treatment records from Plaintiff's left leg fracture requiring the use of a cane and a course of conservative treatment, including trigger point injections for her cervical and lumbar spine and physical therapy, did not reflect a significant deterioration in conditions since Dr. Dave rendered her opinion. (*Id.*).

The ALJ also addressed opinions from Plaintiff's physical therapists and found them to be somewhat persuasive. (*Id.*). He acknowledged the physical therapists' longitudinal treatment history with Plaintiff and the fact that they are considered an "other medical source" pursuant to 20 C.F.R. § 416.927(f). But the ALJ found the opinions to be vague and not expressed in vocationally relevant terms, and noted that the opinion as to whether Plaintiff can work is an issue reserved to the Commissioner. In addition, the opinions were

intended to be temporary assessments during the course of recovery and not an assessment of Plaintiff's overall ability to function.  (*Id.* at 42-43).

Plaintiff takes issue with the fact that the ALJ did not discuss certain medical treatment records including those that documented Plaintiff's continued complaints of pain and worsening cervical disc disorder, abnormal findings at physical therapy evaluations, a recommendation for SI joint injections, and associated headaches from her neck impairment.  But an ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion—rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal.  *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)).  Further, to the extent there were medical records with differing assessments of Plaintiff's reports of pain and functioning, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies.  It is not the court's function to re-weigh the evidence.  *See, e.g.*, *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").  Here, the ALJ's assessment of the evidence of Plaintiff's RFC was proper and well-supported by the record.  As explained above, the ALJ acknowledged Plaintiff's complaints of pain and other treatment records, and actually imposed greater limitations

than opined by some of the medical experts, but concluded that the record as a whole supported an RFC for a reduced range of light work.

In sum, it is clear from the discussion in the written determination that the ALJ carefully considered Plaintiff's pain complaints and medical treatment records, and the finding that Plaintiff could perform a range of light work is supported by medical evidence in the record.  It is likewise clear to the Court how the ALJ arrived at the limitations imposed.  Plaintiff's argument amounts to no more than disagreement with the ALJ's weighing of the evidence, and therefore remand is not required on this basis.

**B.     Plaintiff's Use of a Cane**

Plaintiff also contends that the ALJ erred when he included in the RFC a requirement for cane use but did not discuss how the use of a cane would affect Plaintiff's ability to lift and carry in accordance with the requirements for light work.  The Court disagrees.

Light work does require "a good deal of walking or standing or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b); *see also Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) ("Light work requires the ability to . . . stand and walk for up to 6 hours a day.").  To be sure, the use of a cane can impact a claimant's ability to perform the full range of light work.  Indeed, Social Security Ruling 96-9p, 1996 WL 374185 at *7, expressly notes that the use of an assistive device can even significantly erode the occupational base for a range of sedentary work and recommends consultation with a VE to make a judgment.  See SSR 96-9p, 1996 WL

374185 at *7 ("[I]t may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.").

However, a requirement for the use of a cane alone does not direct a finding that a claimant is incapable of light work. *James L. v. Comm'r of Soc. Sec.*, No. 22-CV-0397MWP, 2023 WL 5662790, at *4 (W.D.N.Y. Sept. 1, 2023) ("Although the use of a cane may not necessarily preclude light work, the use of a cane certainly suggests that an individual may have some restrictions with walking, standing, lifting, and carrying."); *Johnson v. Berryhill*, 2019 WL 1430242, *9 (D. Conn. 2019) ("The use of a cane, however, is not dispositive of a claimant's ability to do light work, though it might trigger the ALJ's duty to further develop the record with regard to the claimant's limitations."); *Clyburn v. Berryhill*, No. 16-CV-1029-FPG, 2017 WL 6014452, at *3 (W.D.N.Y. Dec. 5, 2017) ("The need to use a cane does not automatically limit a claimant to sedentary work or render her disabled. . . . In fact, courts have affirmed decisions where the ALJ found that the claimant could perform a reduced range of light work with the use of a cane." (citation omitted)). Instead, as noted by the cited cases, it prompts further consideration by the ALJ on the impact of the inclusion of such a limitation.

Here, the ALJ specifically presented the VE with hypotheticals that included a requirement for a cane. Initially, the VE informed the ALJ that the use of a cane would preclude the performance of medium work because of the level of standing and walking required by such work. (Dkt. 6 at 75). But when presented with a hypothetical that mirrored the RFC in this case for a reduced range of light work, the VE testified that although the DOT and SCO do not speak to the use of an assistive device, based on her

experience, there were jobs at that level that could be performed by Plaintiff notwithstanding a requirement for use of a cane. (*Id.*). The inquiry and discussion at the hearing satisfied the ALJ's obligations. *See Magby v. Colvin*, No. 15-CV-285-FPG, 2016 WL 4585903, at *3 (W.D.N.Y. Sept. 2, 2016) (affirming RFC for reduced range of light work with cane use where "[a]t the hearing, the ALJ posed a hypothetical question to the VE that included the caveat that 'the individual would use a cane to ambulate.'"); *cf. Jaime C. v. Kijakazi*, No. 3:22-CV-01410 (MPS), 2023 WL 8033685, at *5 (D. Conn. Sept. 14, 2023) (remanding where "the ALJ's hypothetical to the VE did not address additional limitations that arise from someone who requires the use of a cane when ambulating and the impact this may have on her ability to complete some of the duties of light work . . . "); *Zidanich v. Colvin*, No. 16-CV-87-FPG, 2016 WL 6275233, at *5 (W.D.N.Y. Oct. 27, 2016) (remanding case where at "the supplemental hearing, the ALJ posed a hypothetical question to the VE without any caveat that the individual would need to use a cane for balance").[2]  Accordingly, remand is not required on this basis.

---

[2]      A case Plaintiff relies on as being "largely identical" is inapposite because in that case, the issue the ALJ failed to address was whether the use of a cane was medically necessary whereas here, the RFC specifically incorporated use of a cane. *See Sean v. Cmm'r*, No. 20-CV-1653-FPG, 2022 WL 472570, at *3 (W.D.N.Y. Feb. 16, 2022) ("While acknowledging that Plaintiff testified to his need to use a cane, the ALJ did not address whether a cane was medically necessary or incorporate any such assistive device into the RFC.").  As a result, that case does not direct a different outcome here.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 9, 2024
          Rochester, New York